NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

MATILDA SCHALKOFF, PETITIONER, v. CLEMCO, INC., NEW AMSTERDAM CASUALTY CO., RESPONDENT.

Decided March 14, 1939.

For the petitioner, *Minturn & Weinberger* (*David Roskein,* of counsel).

For the respondent, *James J. Skeffington* (*William J. Weliky,* of counsel).

\*        \*        \*        \*        \*        \*        \*

From the testimony adduced, I hereby determine and find as follows:

That on November 10th, 1937, the petitioner was in the employ of the respondent and while so employed, she scratched herself in response to an itching sensation in her right ear, causing an infectious process in the lobe of the right ear and thereafter an erisyploid infection of the right side of her face and neck, to develop. The testimony is clear and convincing that the petitioner was engaged in an occupation which required her to use kerosene as a cleaning agent in which she dipped clips into the same prior to stringing them. Her fingers and hands were wet and dirty during this process. The petitioner, on her return to her home that evening applied zinc ointment to her ear and returned to work and continued working until November 13th, 1937, when the medication which she had been applying at her home, proved of no relief and she developed a temperature, glandular swelling and found herself unable to continue her employment. Petitioner thereupon sought the treatment of Dr. E. Denholtz, who treated her until January 21st, 1938. The said treatment involved the opening of two glands to relieve the infection, drainage, dressings and ultra violet treatment. There remained as a disfigurement following this treatment, two scars in the area where the incision was made, which was described by the doctor to be adherent to the underlying tissue on her neck. It was the doctor's opinion that the petitioner was extremely nervous since this occurrence and complained of irritation in the neck, in the region of the said scars.

There also appeared on behalf of the petitioner, Dr. Samuel Hirschberg, who found *inter alia,* two scars imbeded in this region with a diminished sensation on the right side of her neck. She appeared nervous, irritable and had tremors of the eyelids, fingers and tongue. He found that her reflexes were hyper-active. The petitioner's testimony disclosed that among her subjective complaints were those of nervousness, irritability, and that she feels conscious of the scar on her neck and attempts to wear her hair and her clothing in a manner so as to conceal the same. These scars I find to be five in number, several of which are adherent to the underlying tissue. These scars are present on the right side of the

neck, below the ear line. They are noticeable and apparent on observation. There is a certain amount of adhesion due to scar tissue which resulted from the glandular incision performed by the doctor. I find that they cause her a certain amount of irritation and irritability as a result of being conscious of their presence.

It was the opinion of the petitioner's physicians that she had developed psycho-neurotic symptoms and that the permanent disability attributable to the said accident was ten per cent. of partial permanent total disability.

There appeared on behalf of the respondent, several lay witnesses, as well as Dr. Jack Blumberg. His examination was made during the course of the trial, and it was his opinion that the permanent disability associated with the scars, was equivalent to two per cent. of total. He further felt that if her subjective complaints were taken into account the permanent disability would exceed that amount.

We are frequently confronted with situations where persons work alone. In such cases, it is impossible to procure witnesses corroborating such occurrences. They, nevertheless, are compensable, if, from the general circumstances of the employment, the deputy commissioner feels that the same actually took place. This resolves itself into a question of credibility.

I do not hesitate to accept the testimony of the petitioner and give it complete credence. I have had an opportunity to observe her on the stand while she testified. I am impressed with her honesty and truthfulness. Her actions subsequent to the said accidental occurrence were those normal for one of her intelligence and station in life. She has impressed me as a woman whose testimony is worthy of my belief and I so accept it.

I further feel that there has been established here by competent evidence, a complete chain of causation or rather, a fair history of cause and effect. The disability is proximately caused by accidental means in a physical sense, by a chain of causation which by the facts adduced, is so closely related to the accident that the injury can be said to be proximately caused thereby. The question to be determined is whether

the disability is in fact, the result of injury. *Ystradown Colliery Co.* v. *Griffiths,* 2 *K. B.* 533; *Newcomb* v. *Albertson,* 85 *N. J. L.* 435; 89 *Atl. Rep.* 928.

It is reasonable to expect that persons in the normal activity of their daily life would attempt to relieve the numerous minute irritations the body is subject to. If in such act the skin is broken by scratching, thereby permitting germs to enter and infection to develop, such resultant condition is clearly compensable. A portal of entry was created by such scratching and in view of the condition of her hands in the handling of unclean products, it is probable that such irritation and resultant infection was associated with the irritation which caused her to scratch herself in the attempt to obtain relief. The chain of events which followed are related to the said accidental scratch, and the effects thereof, and are clearly compensable, and I so find.

It is stipulated that the compensation rate of the petitioner is $10, and I find that she is entitled to compensation for temporary disability from November 13th, 1937, to February 4th, 1938, a period of twelve weeks, at the rate of $10 per week, in the amount of $120. I, however, feel that the petitioner has failed to prove that she has suffered any permanent disability associated with the said accident. I do not believe that scars create a permanent disability, as I construe the case of *Everhart* v. *Newark Cleaning and Dyeing,* 119 *N. J. L.* 108; 194 *Atl. Rep.* 294. Petitioner is a woman customarily engaged in factory work. I do not believe the scars on her neck constitute a physical defect which makes her labor unsaleable in any market reasonably accessible to her as a factory worker or as such, renders her labor saleable for less than it would otherwise fetch. Were the petitioner engaged in the theatrical field, I could very readily see how the same would hinder her in securing employment.

\*   \*   \*   \*   \*   \*   \*

JOHN J. STAHL,
*Deputy Commissioner.*